FELIPE TORO QUIÑONES y su esposa JOSEFA FRANQUIZ, demandantes y apelantes, *v.* JENARO FIGUEROA, padre, demandado y apelado.

No. 6205.—*Sometido:* Febrero 1, 1934. *Resuelto:* Noviembre 9, 1934.

*García Méndez & García Méndez,* abogados de los apelantes; *J. Henri Brown, C. Ruiz Nazario, G. E. González y G. Benítez Gautier,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Es ésta una acción que inician Felipe Toro Quiñones y su esposa para que se les indemnicen los daños y perjuicios sufridos en virtud de la muerte de un hijo de veinte meses de edad que fué arrollado por un automóvil que guiaba Jenaro Figueroa, hijo del demandado, mientras actuaba como su empleado y en negocios del referido demandado. Se alega que el accidente ocurrió debido a la culpa y negligencia del conductor del automóvil mientras actuaba dentro del círculo de sus atribuciones en su carácter de empleado de la parte demandada.

La Corte de Distrito de Aguadilla dictó sentencia decla-

rando sin lugar la demanda. Los apelantes no discuten las conclusiones de hecho establecidas por la corte inferior que reproducen en su alegato y que aceptan en las palabras que copiamos a continuación:

"Hemos querido transcribir esta parte de la opinión de la corte porque, aunque estimamos equivocada en lo que a algunos detalles se refiere, la reproducción de la escena en que perdió la vida el menor Samuel Toro Franquiz, es sustancialmente como resulta de la evidencia ofrecida por ambas partes en el presente litigio, siendo así que el presente recurso se funda en el único error de la Corte de Distrito de Aguadilla al interpretar equivocadamente la teoría de la negligencia en este caso, y al no dictar una sentencia favorable al demandante."

Al terminar los apelantes sus comentarios sobre el error atribuído a la corte inferior ratifican su aceptación sobre las conclusiones de hecho del tribunal inferior, expresándose así:

"En otras palabras, y para no cansar la ilustrada atención de este Tribunal, sostenemos que aceptando las conclusiones de hecho a que llegó el tribunal inferior, dicho tribunal inferior ha errado al aplicar la ley del caso, puesto que así considerados los hechos debe concluirse que los mismos imputan una negligencia procesable en contra de la parte demandada."

Las conclusiones de hecho de la corte inferior transcritas por los apelantes en su alegato, dicen así:

"La Corte, para resolver el caso va a tratar de reproducir los hechos ocurridos, como una gráfica evocación del accidente que ha originado la presente reclamación, estimando que para ello son bastantes el testimonio del propio demandante y de su principal testigo don Ramón Banuchi, ya que los demás testigos del actor arrojan poca luz al indicado objeto, y ya que estima innecesario y superfluo el testimonio de los del demandado.

"He aquí en síntesis, la reconstrucción de la trágica escena y que la Corte estima como hechos ciertos y probados, a saber:

"Que en la calle Progreso de Isabela, el día 25 de septiembre de 1930, como a las seis de su tarde y parado a su derecha y en dirección sud, frente a la casa del demandante se hallaba el automóvil de éste,

mientras en la acera del mismo lado, el Sr. Felipe Toro Quiñones (el demandante) hablaba con el Sr. Ramón Banuchi; que el primero, momentos después, sacó sus dos hijos del carro, la víctima entre ellos, y los dejó abajo, entreteniéndose el ahora interfecto con un juguetito, mientras Banuchi y el demandante continuaban su conversación; que pocos momentos después el niño estaba en la calle, detrás del automóvil de su padre y a la sazón venía la guagua 'Doris', propiedad del hermano del Sr. Banuchi, en dirección contraria a la del carro del Sr. Toro que, como se ha dicho, estaba parado; que entonces el automóvil Cadillac del demandado, manejado por su hijo Jenaro Figueroa, Jr., venía en la misma dirección que ocupaba el carro del Sr. Toro y en la contraria, por tanto, a la que traía la guagua, por lo que el Sr. Figueroa, para dar paso a dicha guagua se hizo a su derecha, detrás del automóvil del actor, parando el suyo a una distancia de tres metros o más pero con el motor revolucionando y en dirección oblicua hacia la izquierda de la calle en plan de continuar su marcha, pues interceptando su derecha el del demandante tenía que cortar hacia la izquierda al dar la salida; que en esos momentos el niño del Sr. Toro llamado Samuel, de 18 ó 19 meses de edad, se dirigía por la calle hacia la derecha delantera del carro Cadillac y cuando ponía sus manitas sobre el *bumper* de dicho carro su padre gritó: 'pare, pare' al mismo tiempo que el carro iniciaba su marcha, todo lo que ocurrió de un modo simultáneo, dando lugar a que el mismo fuera derribado, pasándole por su extremidad superior la rueda delantera del carro de referencia, habiendo sido retirado ya cadáver de entre el espacio que media de rueda a rueda de la parte derecha del vehículo; que Figueroa dirigía el carro desde la izquierda donde se halla instalado su gobernallo o guía; que Figueroa miraba en esos momentos hacia adelante en línea recta en relación con la dirección en que había quedado detenido su automóvil o sea en dirección oblicua o diagonal.

"Como consecuencia de la reproducción de los hechos que a la luz de la prueba hemos podido hacer, el Juzgador ha llegado a las siguientes conclusiones:

"Que Jenaro Figueroa, Jr., al detener su carro lo hizo en evitación de una colisión con la guagua 'Doris' que se aproximaba en dirección opuesta; que paró a una distancia conveniente en relación con el carro del demandante; que para dar salida debía dirigir, como dirigió, su mirada y el automóvil hacia la izquierda, desde el asiento delantero de ese mismo lado, por hallarse delante el carro del Sr. Toro y para poder avizorar la posible aproximación de cualquier otro

vehículo que viniera en dirección contraria; que, como personalmente hemos comprobado, a propuesta de los abogados de ambas partes, en razón a la altura de la parte delantera o coraza del carro Cadillac la estatura corriente de un niño normal de 19 meses y el sitio del carro que ocupaba, Figueroa Jr. no pudo en modo alguno ver al niño en el momento de tocar el *bumper* ni de exclamar el padre 'pare, pare' y dar la salida o reánudar la marcha el carro, pues todo ocurrió, como ya hemos dicho, de un modo simultáneo; y que al oír el Sr. Figueroa la voz de alarma del demandante, detuvo la marcha casi instantáneamente, ya que, el cadáver de la víctima fué extraído de entre las ruedas de la derecha del automóvil.

"Siendo todo ello así, nos es fuerza declarar que aquí se trata exclusivamente de un accidente desgraciado, dolorosamente lamentable, es cierto, pero sin que mediara negligencia, descuido, falta de circunspección ni imprudencia en el más leve grado por parte del Sr. Jenaro Figueroa, Jr., y lo que se debió más bien a la nesciencia del peligro por parte de la víctima, propia de su tierna edad, y a la distracción de su señor padre, enfrascado como se hallaba en la conversación que venía sosteniendo con el señor Banuchi."

Dadas las conclusiones de hecho establecidas por la corte inferior, opinamos que debe confirmarse la sentencia apelada. Hemos estudiado detenidamente toda la prueba practicada y no tenemos duda alguna de que en este caso los hechos que los mismos demandantes aceptan ocurrieron en la forma en que han sido descritos por el tribunal *a quo*. Las conclusiones de derecho nos parecen acertadas. Como ha dicho la corte inferior, se trata en este caso de un accidente desgraciado, verdaderamente lamentable en el cual no ha intervenido culpa o negligencia por parte del conductor del automóvil.

*Debe confirmarse la sentencia apelada.*